## THE BARKER PIANO COMPANY *vs.* THE COMMERCIAL SECURITY COMPANY ET ALS.

*Third Judicial District, Bridgeport, October Term, 1918.
RORABACK, WHEELER, BEACH, CURTIS and HAINES, JS.

The plaintiff retailed pianos under contracts of conditional sale payable in instalments. On March 1st, 1913, it agreed with the defendant, an Illinois corporation, "to sell," and the defendant "to buy," such of said contracts as the defendant might deem acceptable, for seventy per cent of their unpaid face value, upon their delivery duly assigned and guaranteed by the plaintiff, and twenty per cent additional upon the amount that should thereafter be collected and remitted to the defendant, until ninety per cent had been paid "as the full purchase price of said contracts." The agreement further provided for the "repurchase" by the plaintiff of defaulted contracts and the substitution therefor of other acceptable contracts of equal value. Interest was to be computed at six per cent upon the total amount of unpaid monthly balances, less the interest on the twenty per cent reserve held by the defendant. Instalments upon the piano contracts were to be collected at the place of business of the plaintiff, whose vice-president was appointed as the defendant's agent for that purpose at a salary of $5 a year; but the collections were in fact made in the name of the plaintiff and by its clerks. No notification of this transaction was given to the conditional vendees of pianos, until about a week before bankruptcy proceedings were brought against the plaintiff, in July, 1914, and until after the defendant knew of the plaintiff's insolvency. Up to the appointment of the trustee in bankruptcy the defendant had paid to the plaintiff about $9,000 more than it had received back, and the trustee at the time of bringing this suit of interpleader had in his hands over $10,000 collected on piano contracts assigned to the defendant. *Held:*—

1. That the transaction in question, though disguised as a sale of accounts, was in effect a series of loans and of pledges by way of security; and that the conduct of the parties in the performance of the contract very clearly led to the same conclusion.

2. That the defendant corporation, being forbidden by the laws of Illinois from engaging in the business of loaning money, had no interest in or lien upon the fund—collected from piano contracts—which was in the hands of the plaintiff's trustee in bankruptcy; that this defendant's rights were not those of an owner of the

* Transferred from first judicial district.

choses in action, but those of a creditor who, from the bare fact of lawful possession of the debtor's papers, had become entitled to retain them until its debt was paid.

3. That a similar transaction between the plaintiff and one *S* was not affected by any question of *ultra vires*, but was effectual, as between the parties, to create an equitable lien upon the assigned accounts; and that inasmuch as the assignments to *S* were perfected by notice given by him to the debtors before the proceedings in bankruptcy were begun, although after he had learned of the plaintiff's insolvency, they were valid as against the trustee in bankruptcy, to the extent of the advances made by *S*.

A void contract cannot give rise to a valid lien.

A pledgee or assignee who gives a false credit to the pledgor or assignor by neglecting seasonably to perfect his rights, may lose them, if others act upon the appearance of credit thus created.

Argued October 29th—decided December 17th, 1918.

SUIT by a trustee in bankruptcy to determine the rights of the respective parties in and to payments made, and to be made, by purchasers of pianos sold upon contracts of conditional sale by the plaintiff prior to the adjudication in bankruptcy, and for other equitable relief, brought to and tried by the Superior Court in Hartford County, *Gager, J.;* facts found and judgment rendered for the plaintiff's trustee, from which two of the defendants appealed. *Error in part.*

The Barker Piano Company was engaged in the business of selling pianos under contracts of conditional sale which provided for the payment of the purchase price in instalments. On March 1st, 1913, it entered into a contract with the Commercial Security Company of Illinois, which purported to be a contract for the sale by the Barker Company and the purchase by the Commercial Company of acceptable piano contracts from time to time. The terms of the transaction and the course of business under it, as stated in the findings, may be summarized as follows: The contract provided that "first party hereby agrees to sell and second party agrees to buy from time to time such of

said contracts which shall draw 6% interest per annum, and which second party shall indicate will be acceptable to it, paying therefor 70% [in fact 72% was paid] of the unpaid face value thereof upon delivery duly assigned and guaranteed by first party and their acceptability duly indicated by second party, and paying a further 20% of the unpaid face value of said contracts, as nearly as practicable in quarterly instalments, but not to exceed 20% of the amounts that shall from time to time be thereafter collected and remitted to second party upon said contracts by first party or collector under terms of this agreement, less any payments of principal or interest on contracts or on any other obligation in default, until a total of 90% shall have been paid as the full purchase price of said contracts."

Other clauses provided for the repurchase by the Barker Company of defaulted contracts, or for the substitution therefor of other acceptable contracts of equal value; for the execution of satisfactory assignments and guaranties, and for the collection of instalments at the Barker Company's place of business by an agent of the Commercial Company. By another instrument the vice-president of the Barker Company was appointed such agent at a salary of $5 a year; but the finding is that the collections were made in the name of and by the clerks of the Barker Company. Interest was to be computed on the total amount of unpaid monthly balances on contracts, less interest on the 20% reserve held by the Commercial Company.

The conditional vendees of pianos were not notified that these contracts had been assigned to the Commercial Company until about a week before proceedings in bankruptcy were brought against the Barker Company in July, 1914, and until after the Commercial Company knew that the Barker Company was insolvent.

Up to the appointment of the trustee in bankruptcy, the Commercial Company had paid to the Barker Company about $9,000 more than it had received back, and the trustee now has in his hands over $10,000 collected on contracts assigned to the Commercial Company.

On March 31st, 1913, the Barker Company made a contract with Shale, trustee, the other appealing defendant, which in form and result was substantially the same as the transaction already summarized; although Shale, trustee, paid no money to the Barker Company, except $1,000 less brokerage, but furnished it with credit which enabled it to buy pianos on credit from the American Piano Company and its subsidiary companies. Under this arrangement contracts of the face value of $7,798 had been assigned to Shale, trustee, for which he had furnished cash and credit of $3,884.10 when the trustee was appointed. The trustee now has in his hands about $3,000 collected on contracts assigned to Shale, trustee. It seems to be agreed that Shale, trustee, has furnished cash and credit to the Barker Company in excess of collections received by him on assigned accounts, although the amount of such excess is not stated in the findings. Notice of the assignment was not given by Shale, trustee, to the conditional vendees until shortly before the institution of the bankruptcy proceeding and after he knew that the Barker Company was insolvent.

*Arthur L. Shipman,* with whom was *W. Lee White* of New York City, for the appellants (two of the defendants).

*John T. Robinson,* with whom was *Stewart N. Dunning,* for the appellee (plaintiff's trustee in bankruptcy).

BEACH, J. As stated on the appellants' brief, the appeals raise two main questions to which all others

are incidental: (1) whether or not the Superior Court erred in holding that the transactions between the appellants and the Barker Company constituted loans and pledges rather than sales; and (2) even if the transactions constituted loans, whether or not the trustee was obliged to pay to the appellants, respectively, the unpaid portions of principal advanced with interest.

We take up first the claim of the Commercial Company. By the law of Illinois—in accordance with which the parties stipulated that the contract was to be interpreted—as well as by the law of this State, the first question is to be answered by ascertaining the real intent of the parties as expressed in their contract and exhibited by their conduct. The Barker Company assigned to the Commercial Company all its right, title and interest in and to the contracts in question and in and to the property therein described, and the question is whether such assignments were intended to transfer the general property in these choses in action, or whether they were intended to convey to the Commercial Company whatever special property might be necessary to secure the repayment, with interest, of moneys advanced. In the Supreme Court of Illinois and in the Circuit Court of Appeals of this circuit, contracts of this type have been held to be contracts for loans on security, although purporting on their face to be contracts for the purchase and sale of accounts. *Mercantile Trust Co.* v. *Kastor*, 273 Ill. 332, 112 N. E. 988; *Dorothy* v. *Commonwealth Co.*, 278 Ill. 629, 116 N. E. 143; *In re Grand Union Co.*, 135 C. C. A. 237, 219 Fed. Rep. 353. An effort is made to distinguish these cases, but the differences are of detail. The controlling fact in all of them is that the original instalment of the so-called purchase price (77% of the face of the account in the *Kastor* case, 78% to 73% in

the *Dorothy* case, 70% in the *Grand Union* case, and 72% and 80% respectively in the cases at bar) constitutes the entire outlay which the alleged purchaser makes in respect of any account, and the right to the repayment of it, with interest and brokerage charges, constitutes the entire interest which the alleged purchaser acquires in any assigned account. For example, the Commercial Company, on assignment of a guaranteed piano contract on which $500 was payable in ten equal monthly instalments, would, under the contract in question, pay the Barker Company $360, 72% of the face value of the contract, and assuming that all subsequent instalments of the purchase price were promptly paid, it would receive in the course of ten months $500, out of which it would be entitled, under the contract, to retain the sum originally advanced plus interest on monthly balances amounting to about $7.50, plus a brokerage charge of $40. It is, however, obligated by the contract to return the remaining $92.50 to the Barker Company, and obviously this amount represents an interest in the account with which the Barker Company has never parted. Except for the purpose of concealing that fact, the contract might as well have provided that the Barker Company should retain a certain balance of each account, instead of providing that such balance should first be remitted to the Commercial Company and then turned back to the Barker Company disguised as part of the "full purchase price" of the account. Despite a labored effort to conceal the real nature of the transaction, it is transparently clear that the Commercial Company never acquired any larger interest in the assigned accounts than to be repaid, out of collections, its original advances plus interest and brokerage charges, and that the Barker Company retained whatever equity was left after the Commercial Company was satisfied.

The conduct of the parties leads us to the same conclusion. Under its contract with its conditional vendees, the Barker Company agrees to keep the pianos tuned for one year and to guarantee them for ten years, and the finding is that the Commercial Company never agreed to assume and never intended to assume these obligations. The contracts of conditional sale gave the Barker Company the right to retake the pianos in case of default, and the finding is that repossessions under the assigned accounts were made by the Barker Company and not by the Commercial Company; also that when a repossession was made by the Barker Company under any contract, it was required by the Commercial Company to take the contract back and replace it with another contract in good standing. It is also found that all the labor and expense of collections and all losses due to repossessions were borne by the Barker Company. Complete control of the accounts was left in the hands of the Barker Company and all receipts given in its name, and notwithstanding the appointment of the vice-president of the Barker Company as agent of the Commercial Company to collect and remit, the finding is that the Commercial Company looked solely to the Barker Company for payments.

These things show that the Commercial Company did not exercise the rights or assume the risks and obligations of an absolute owner of the assigned contracts, but on the contrary left them to be performed and assumed by the Barker Company as if no transfer of the general property in the contract had been intended. On the other hand, the Commercial Company required the Barker Company to guarantee the accounts and to substitute fresh contracts for those which were in default. It charged interest on its advances, and it returned to the Barker Company all contracts

which were fully paid. It seems clear that the assignments were really intended as security for the repayment with interest of moneys advanced.

The transaction between the Barker Company and Shale, trustee, comes to the same result. Practically, Shale, trustee, lent his credit instead of his cash. Otherwise, the relation between the parties was the same as under the Commercial Company contracts.

The next question is whether the trustee in bankruptcy holds the collections on assigned contracts impressed with a lien in favor of the claimants to the extent of their advances with interest. In the case of the Commercial Company it is found that the corporation was organized under laws of Illinois which forbid corporations so organized from engaging in the business of loaning money; and in *Mercantile Trust Co.* v. *Kastor*, 273 Ill. 332, 112 N. E. 988, and *Dorothy* v. *Commonwealth Co.*, 278 Ill. 629, 116 N. E. 143, it was held that contracts of this class were *ultra vires* of corporations not specially authorized to loan money. A void contract cannot give rise to a valid lien, and in the *Kastor* case it is accordingly pointed out that if such a corporation can recover money which it had no power to loan, the recovery is not by virtue of the contract which it had no power to make, but on the ground that a party cannot retain money received under a contract void merely for want of power to enter into it, without making compensation therefor.

It is said that this doctrine, which is familiar law, has been overruled or modified in Illinois by the later case of *Dorothy* v. *Commonwealth Co.* There is, however, no conflict between the two cases. On the contrary, the *Dorothy* case expressly affirms the *Kastor* case. In the *Dorothy* case the bill of complaint prayed for an account and that "upon payment" of "such amount as may be found due by the court" (278 Ill. 646, 116 N. E.

148) the respondents might be ordered to turn over accounts and papers which, as alleged in the bill, were held as collateral under an *ultra vires* contract for loans at a usurious rate of interest. The court upheld the trustee's allegations as to the nature and illegality of the transaction, and applied the rule laid down in the *Kastor* case: that the admitted right of the Commonwealth Company to be repaid its advances did not arise out of the void contract but out of the obligation imposed by law; and that the trustee, as a condition of obtaining the affirmative relief prayed for, must pay the Commonwealth Company not the amounts contracted for, but its advances with legal interest. Translated into terms of lien, this decision refuses to recognize the contract right attempted to be created by the void assignments, but does recognize the lien arising from the creditors' lawful possession of the demanded papers.

So in this case, the Commercial Company is doubtless entitled to retain the assigned piano contracts until its advances, with 6% interest, are paid. And upon the face of the papers it was, as the Circuit Court of Appeals said, "apparently entitled to collect" the instalments of the purchase price which became due after the conditional vendees were notified of the assignments. *In re Barker Piano Co.*, 147 C. C. A. 408, 233 Fed. Rep. 522. But it now appears that these assignments were void, and therefore it now appears that the Commercial Company never had any enforcible right to collect the fund now in the hands of the trustee. Its rights are not those of an owner of the choses in action, but those of a creditor who, from the bare fact of lawful possession of the debtor's papers, has become entitled to retain them until his debt is paid. This gives the Commercial Company no interest in or lien upon the collections in the hands of the

trustee in bankruptcy, and no such interest or lien can arise out of the void contract.

The claim of Shale, trustee, to be a secured creditor is not affected by any question of *ultra vires.* His contract was valid and effectual to create an equitable lien on the assigned accounts as between the parties, and the only objection to its enforcement against the proceeds of assigned contracts in the hands of the trustee, arises from the fact that the assignments were not perfected by notice to the debtors until shortly before the adjudication in bankruptcy, nor until after Shale, trustee, knew that the Barker Company was insolvent. Nevertheless the assignments were perfected before the proceedings in bankruptcy were begun, and the question then is whether an imperfect assignment of choses in action based upon a valuable and adequate consideration is invalid against creditors of a bankrupt, because not perfected by notice to the debtors until shortly before the filing of the petition in bankruptcy. We have recently had another phase of this same question before us in *Bank of Buffalo* v. *Aetna Indemnity Co.,* 90 Conn. 415, 97 Atl. 332. In that case the thing pledged was grain, and the act necessary to perfect the pledge was taking actual possession, which was not done until shortly before the appointment of a receiver in bankruptcy; nevertheless we held that the pledge was valid as against the receiver and trustee. There is no difference in principle between this case and that, and on the authority of the case cited the assignments of contracts to Shale, trustee, are valid to the extent of conferring upon Shale, trustee, a security-title for the repayment of his advances on the terms agreed upon. It makes no difference that Shale, trustee, did not perfect the assignments until after knowledge of his debtor's insolvency, for if the assignments can be perfected at

all, they relate back to the time of the transaction out of which they arise, and therefore their validity depends on the character of that transaction.

Of course, a pledgee or assignee who gives a false credit to the pledgor or assignor by neglecting seasonably to perfect his rights may lose them, if others act upon the appearance of credit thus created. But there is no finding in this record that any false credit was given by the delay, or that any other creditor of the Barker Company has been misled, and no presumption of intent to hinder or defraud creditors arises from mere delay in perfecting an otherwise valid lien. *Bank of Buffalo* v. *Aetna Indemnity Co.*, 90 Conn. 415, 97 Atl. 332.

There is error in part and the cause is remanded with directions to enter a judgment that the Commercial Security Company has no title to or lien upon any funds collected by Stewart N. Dunning, trustee in bankruptcy of the Barker Piano Company; and with direction to ascertain the amount of the Barker Piano Company's outstanding indebtedness for money and merchandise furnished to it by J. H. Shale, trustee, under the contract Exhibit S–1, with interest from the dates of the respective advances and deliveries; to render judgment that the moneys collected and to be collected by Stewart N. Dunning, trustee in bankruptcy of the Barker Piano Company, from contracts of conditional sale assigned to J. H. Shale, trustee, are and will be impressed with a lien in favor of Shale, trustee, to the extent of the amount so ascertained, and to render judgment that out of the proceeds of such assigned contracts collected and to be collected, J. H. Shale, trustee, recover of Stewart N. Dunning, trustee in bankruptcy, the amount so ascertained.

In this opinion the other judges concurred.