## ELMER v. COMMISSIONER OF INTERNAL REVENUE.

### No. 135.

Circuit Court of Appeals, Second Circuit.
June 5, 1933.

Hugh Satterlee, of Washington, D. C. (Alfred S. Weill, of Philadelphia, Pa., and I. Herman Sher and Henderson Mathews, both of New York City, of counsel), for appellant.

Morton K. Rothschild and Sewall Key, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and J. E. Marshall, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The question raised by this appeal is of the taxpayer's right under section 212(d) of the Revenue Act of 1926 (26 USCA § 953(d)—which was made retroactive—to al-

locate part of his income from installment sales among the years when his customers actually paid for the goods. This in turn depends upon whether the transactions between him and two "finance companies," were sales or loans. If sales, he agrees that the Commissioner and the Board were right, who refused to allow the payments to be spread beyond the year in which he assigned his customers' contracts to the finance companies; if loans, the Commissioner agrees that he should have been allowed to allocate the payments to the years when the buyers actually paid.

The taxpayer was a selling agent in Hartford for Ford motorcars, which he sold upon the installment plan. His terms of sale were $50 cash down, and a series of weekly or monthly payments over a period of not more than eighteen months. As evidence of the customer's indebtedness he took one or more notes, bearing interest, secured by a contract of conditional sale, which reserved title to him, and gave him the right to retake and sell the car upon default in the payment of any installment. Being in need of ready funds, he raised money upon these notes by endorsing them to companies organized for that purpose, and assigning his interest in the contracts. For the earlier part of the period in question he dealt with a Maryland company, in which he had no interest; but later he organized a company of his own in Hartford. Although he was the prime mover in this company, and owned or controlled substantially all its shares, for the purposes of this case it is to be treated as a stranger.

The nature of the transactions with the Maryland company is left very vague in the findings and in the evidence; the taxpayer cannot ask more than that we assume them to have been of the same kind as those with the Hartford company, about which we can learn more. To this company he "sold" and assigned his customers' contracts outright, including his interest as conditional seller, and endorsed their notes. For this he received the face of the unpaid purchase price, less insurance charges which the company agreed to pay. Apparently it also deducted some "interest" charges for itself, though the notes themselves bore interest. The company agreed to tell him of any default, upon which he was at once to retake the car under the contract and sell it, probably as its agent, though that is not clear; but in any event he was to repay the amount realized. The company got all the payments from the customer direct, and was repaid in full, if he did not default. If he did, it kept all he had paid,

got the proceeds from the sale of the car, and the dealer merely made up the difference between these amounts and the original advance.

Such transactions are somewhat ambiguous and admit of definition as loans or sales on slight differences. If a merchant discounts his customer's note at a bank, endorsing it, but getting immediate credit for its discount value, it would be a most unnatural thing to consider it a loan from the bank. He remains liable if the customer defaults, but the collection is in the bank's hands, and the transaction is closed in the absence of a default. If, on the other hand, a merchant pledges his accounts to a "finance" company and collects them himself, paying the loan out of his collections, it is clearly a loan, and has always been so considered. Home Bond Co. v. McChesney, 239 U. S. 568, 36 S. Ct. 170, 60 L. Ed. 444; In re Gotham Can Co., 48 F.(2d) 540 (C. C. A. 2); In re Grand Union Co., 219 F. 353 (C. C. A. 2); Nat. T. & C. Co. v. F. H. Orcutt & Son Co., 259 F. 830 (C. C. A. 7); Commercial Security Co. v. Holcombe, 262 F. 657 (C. C. A. 5). The law in Connecticut is the same. Barker Piano Co. v. Commercial Security Co., 93 Conn. 129, 105 A. 328. These transactions were different; the finance companies collected the notes themselves, and, as we have said, if the customer did not default, the dealer had no more to do than if he had discounted his note with a bank. Nor was there any equity in the assigned accounts for which the companies were responsible to the dealer; the full amount was paid, less a somewhat nebulous "interest" charge, which gave the companies a profit of more than the interest on the customer's note. If the dealer was the companies' agent to retake and sell the cars, their interest never reverted to him; it remained in them as it had been originally transferred. It is at least open to doubt whether this was not the relation, and doubts are resolved against the taxpayer. In some cases indeed the companies appear to have retaken the cars themselves. In any event, the dealer's liability was only to pay what remained of the customer's debt; he never became liable for the original advance he had received.

It is true that in the contract between the taxpayer and the Hartford company, the advances were spoken of as "loans," but this is not conclusive, especially as the dealer "sold" his rights to the company. Possibly the parties thought of them as loans; a merchant might similarly regard a discounted note, or any other transfer of property

whose value he warranted. It is possible, as we have suggested, to construe these transactions in either way. We incline to consider them as more nearly analogous to discounts, because they were closed transactions unless the customer defaulted, the dealer having nothing to do with collection; because there was no equity to be remitted; because, though the dealer was to enforce the collateral, he may have done so as agent for the company, which remained entitled to the proceeds; and because he was never liable for the advances as such. In any case the evidence is not clear enough to upset the findings.

Order affirmed.