EAST COAST EQUIPMENT COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 30984. Promulgated October 22, 1953.

*Harry Norman Ball, Esq.,* for the petitioner.
*John D. Armstrong, Esq.,* for the respondent.

114

116

OPINION.

HILL, *Judge:* During the taxable years 1946 and 1947 the petitioner, which was engaged in the trade or business of selling construction equipment, entered into 26 agreements. Each of these agreements was captioned "Equipment Rental Agreement." Simultaneously with the execution of these agreements, the petitioner and the purported lessee executed a purchase option covering the same property included in the rental agreement.

The petitioner contends that the transactions in controversy accomplished no more than the rental of the construction equipment involved and that the exercise of the option granted to the purported lessee resulted in a sale or exchange of a capital asset.

On the other hand, the respondent argues that the agreements were intended to and did effect installment sales of equipment held for sale in the ordinary course of the petitioner's business and, further, that the petitioner distributed, transmitted, sold, and otherwise disposed of the installment obligations when it transferred the agreements to the Contractors Acceptance Corporation.

To support its argument, the petitioner relies upon the formal terms of the equipment rental agreement alone and ignores the purchase option agreement executed simultaneously therewith and as part of the same transaction. Obviously such segregated consideration is not permissible under the factual situation here presented. The consideration of both agreements as constituting together the basis of interpretation of the purport and effect of the transaction as an integrated whole is required. We thus are enabled to ascertain the real substance of the transaction despite diverting formality of terms if the rental agreement were considered separately and alone. As between substance and form, the former must prevail. *Commissioner v. Court Holding Co.*, 324 U. S. 331.

An examination of the agreements and the circumstances out of which the transactions arose leads us to the conclusion that the determination of the respondent with respect to this issue is correct. The equipment rental agreements must be read in the light of the terms of the purchase option granted to the purported lessee. When this is done it appears that the equipment involved was held for sale and not for lease. It was not intended that such property should be leased except in connection with an option to purchase at the price of the total downpayment and installment rental payments. It is inconceivable that the optionee would not exercise the option to purchase since the financial burden thereof was the same as his financial obligations under the so-called rental agreements. No one in the exercise of reasonable business judgment would refuse or neglect to take title

to valuable assets, the purchase price of which he has already paid or the amount of which he is obligated to pay whether or not he takes such title. Indeed, such was the case in every instance here. At the end of the so-called rental period the lessee acquired title to the property without further payment. Further, interest-bearing notes were required by the petitioner from the purported lessee to secure the payment of the monthly installments.

While the petitioner set these transactions up on its books under the heading "Rental Equipment," it is interesting to note that it claimed no depreciation on the equipment as it would have been entitled to do had the equipment been in fact rented.

No authority is cited by the petitioner in support of its contention that the agreements here involved accomplished rentals as a matter of law, nor do the facts support such a proposition. The petitioner's argument that the equipment sold under the agreements constituted capital assets is equally without basis. Our findings of fact in any event are determinative of this question for there can be no doubt that the equipment covered by the rental agreements was property held for sale by the petitioner in the ordinary course of its business.

Each of the 26 agreements involved in this proceeding was transferred by the petitioner immediately upon acquisition to the Contractors Acceptance Corporation. To effect the transfer the petitioner signed in each case the "Assignment and Recourse Agreement" set forth in our Findings of Fact. As the terms of that agreement indicate, the petitioner sold and transferred the installment obligation to Contractors Acceptance Corporation and received in turn a cash equivalent. *Elmer* v. *Commissioner*, 65 F. 2d 568. The petitioner contends that in doing so it did not dispose of the installment obligations but simply pledged them with the finance company as collateral security for loans. However, the evidence fails to bear this out. There is nothing in the agreements between the petitioner and the Contractors Acceptance Corporation to indicate that the parties thereto intended that the installment obligations should simply be pledged as security for loans. On the contrary, the conduct of Contractors Acceptance Corporation indicates otherwise for the record reveals that it was the habit of Contractors Acceptance Corporation to deal with the installment obligations as it would its own property. In many instances Contractors Acceptance Corporation in turn transferred the installment obligations to a bank to secure moneys needed in its business. Further, Contractors Acceptance Corporation was compensated for its efforts not by the petitioner but by the equipment purchasers who bore the tariff in the guise of interest-bearing notes transferred by the petitioner to Contractors Acceptance Corporation along with the other contracts. Further, the books of Contractors

Acceptance indicate that that corporation considered the transaction one of purchase and of sale. We do not deem the fact that the petitioner guaranteed the installment paper significant. *Thos. Goggan & Bro.*, 45 B. T. A. 218; *Miller Saw-Trimmer Co.*, 32 B. T. A. 931. Nor is the fact that the petitioner issued bills of sale to the purchasers of the equipment determinative.

The petitioner points to the terms of the equipment rental agreement requiring the purchaser to insure for the benefit of the petitioner the equipment purchased, to properly protect the equipment and keep it in good condition and repair, and granting the petitioner the right to inspect the equipment as considerations supporting its position. However, such provisions can hardly be deemed strangers to installment sales contracts. In any event, the benefits of these provisions passed to the Contractors Acceptance Corporation along with the right to payment, when the installment obligations were sold by the petitioner.

The privileges granted by section 44 (a) of the Internal Revenue Code are therefore not available to the petitioner because the conditions imposed by section 44 (d) provide that the gain or loss resulting from the distribution, transfer, or sale of installment obligations shall result in gain or loss in the year in which the installment obligations are disposed of. *Rhett W. Woody*, 19 T. C. 350. Further, the petitioner's gain results in ordinary income for the amounts received on the installment obligations represented the proceeds derived from the sale of equipment held by the petitioner for sale to customers in the ordinary course of its business.

The second issue for our decision grows out of the following facts: Tractor was indebted to the petitioner in the amount of approximately $67,000. The debt, which resulted from sales on open account and from services rendered, was due and owing in the taxable year 1948. In March of that year the petitioner accepted in full settlement of its debt Tractor's note in the sum of $18,210.04, plus four notes made by the Seaboard Construction Company, which were the property of Tractor, aggregating in face amount $48,500, which had a fair market value on the date of settlement of $10,000. On March 24, 1948, the petitioner sold the Seaboard notes for $10,000 and in its tax return for the taxable year 1948 reported the difference between the fair market value of the Seaboard notes and their face value, or $38,500, as a "loss on sale of note."

The claimed deduction was disallowed by the respondent. At the hearing the petitioner's counsel stated to the Court that the petitioner was claiming a bad debt deduction in the amount of $38,500, but on brief the petitioner claims alternatively a deduction as an ordinary and necessary business expense or a bad debt.

We do not deem it necessary to consider either of these positions for we are not convinced that the transaction out of which the claimed deduction arises was a bona fide settlement of an indebtedness. In reaching this decision we are not unmindful of the fact that the same persons controlled all three of the corporations involved. This, coupled with the lack of evidence concerning the financial position of Tractor, makes it difficult for us to believe that the transaction was any more than a voluntary arrangement between the petitioner and Tractor for the purpose of shifting the loss incurred by Tractor, as the result of the poor financial condition of Seaboard, to the petitioner, which, as the record indicates, stood to derive the greatest tax benefits thereby. Tractor was a solvent operating company at all times. There is nothing in the evidence to indicate that Tractor could not have paid the petitioner in full or the reasons why it did not beyond the statement of one of the witnesses to the effect that Tractor was in a "tight" cash position.

The petitioner has the burden of disproving the correctness of the respondent's determination. This it has failed to do. We, therefore, sustain the respondent's determination with respect to this issue.

The third issue concerns the respondent's disallowance of a deduction claimed by the petitioner for attorney's fees. The evidence shows that the services were in fact rendered in connection with the routine matters ordinary and necessary to the petitioner's business in the year claimed and that in that year the attorney in question rendered his bill. Since the petitioner reported on the accrual basis, we hold that the petitioner is entitled to a deduction of $1,500 for attorney's fees in the taxable year 1948. *Lanova Corporation*, 17 T. C. 1178.

The fourth issue concerns the reasonableness of the salary paid by the petitioner to its secretary and treasurer, Loretta B. Frantz. We think our findings of fact in respect of this issue clearly indicate that the allowable deduction for compensation paid her for services in 1948 is reasonably the amount of $1,200.

The petitioner failed to file an excess profits tax return for the taxable year 1946. The respondent in determining the deficiencies herein imposed the penalty required by section 291 of the Internal Revenue Code. The evidence establishes that the petitioner relied upon the advice of both its accountant and its attorney and failed to file an excess profits tax return for 1946 as the result of this advice. Reliance in good faith on reasonable grounds upon the advice of reputable counsel constitutes reasonable cause for failure to file a required return. Such reliance is sufficient to save the petitioner from the imposition of the penalty here in question. *C. R. Lindback Foundation*, 4 T. C. 652.

*Decision will be entered under Rule 50.*