BRIZARD COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 54923. Filed September 10, 1957.

*L. W. Wrixon, Esq.*, for the petitioner.
*Aaron S. Resnik, Esq.*, for the respondent.

1144

**OPINION.**

WITHEY, *Judge:* Pursuant to the Excess Profits Tax Act of 1950, indebtedness qualifying as borrowed capital within the meaning of section 439 (b) (1) of the 1939 Code [1] is a factor to be utilized in the computation of the excess profits credit under both the income credit method and the invested capital method. With respect to the income credit method, borrowed capital to the extent of 75 per cent is taken into account in the computation of capital additions in the base period and in the computation of the adjustment for capital additions and deductions during an excess profits tax year.

It is unquestioned that petitioner, a corporate taxpayer, may include in its borrowed capital its share of qualified partnership in-

---

[1] SEC. 439. BORROWED CAPITAL.

(b) DAILY BORROWED CAPITAL.—For the purposes of this subchapter, the daily borrowed capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following:

(1) The amount of the outstanding indebtedness (not including interest) of the taxpayer, incurred in good faith for the purposes of the business, which is evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, deed of trust, bank loan agreement, or conditional sales contract. In the case of property of the taxpayer subject to a mortgage or other lien, the amount of indebtedness secured by such mortgage or lien shall be considered as an indebtedness of the taxpayer whether or not the taxpayer assumed or agreed to pay such indebtedness, * * *

debtedness. See *Pacific Affiliate, Inc.*, 18 T. C. 1175, Supp. Op. 19 T. C. 245, affd. 224 F. 2d 578.

The respondent has determined that the amounts received by Brizard-Matthews Machinery Company from the Bank of America in exchange for the assignment of notes and conditional sales contracts do not qualify as borrowed capital under section 439 of the 1939 Code.

The petitioner contends that the cash amounts so received represent the proceeds of a loan and, therefore, that they constitute borrowed capital within the meaning of section 439 of the 1939 Code.

In order to sustain its position, it is incumbent upon petitioner to demonstrate the existence of an outstanding indebtedness evidenced by one of the types of instruments specified in section 439 (b) (1) of the 1939 Code.

In examining the evidence presented herein, our attention is drawn immediately to the language employed in the documents accompanying the assignment transaction. The form of assignment used in connection with discounting the conditional sales contracts states that the assignor "does hereby sell, assign, and transfer * * * its * * * right, title and interest in and to the within contract." The assignment further makes at least three specific references to the "purchase" of the contract. The form of assignment used in assigning promissory notes and chattel mortgages to the bank contains the phrase, "does hereby sell, assign, endorse and transfer * * * its * * * right, title and interest in and to the within Chattel Mortgage and the Note therein described," and twice makes reference to the "purchase" of the instruments. The "Dealer's Agreement" in effect between Brizard and the bank designates Brizard as the "seller" and also speaks of the "purchase" of the contracts. Thus, the instruments governing the arrangement between the bank and Brizard-Matthews Machinery Company with respect to the assignment of notes and contracts quite obviously are drawn in terms of purchase or sale, rather than borrowing or lending. The foregoing agreements appear clearly to contemplate that the ownership of the discounted paper would be transferred to the bank. The acquisition of such paper by the bank was without recourse, subject only to the obligation of Brizard to satisfy those accounts which became delinquent for 60 days or more.

With respect to any assigned contract which did not become delinquent for as long as 60 days, Brizard was under no liability to the bank.

We previously have held that a contingent liability does not represent an outstanding indebtedness sufficient to constitute "borrowed capital" within the meaning of section 719 of the 1939 Code. *Fraser-Smith Co.*, 14 T. C. 892.

The form of notice used by the bank in notifying the installment purchaser of the assignment of the note or contract states: "Your dealer has sold to us your contract or note," indicating that the bank regarded the assignment transaction as a sale. That Brizard likewise regarded the assignment of its installment contracts to the bank as a sale appears from the fact that it did not record the items so assigned as accounts payable or notes payable on its books. The books of Brizard contained no entry indicating any liability in favor of the bank as the result of the assignment of a note or contract.

In support of its position, the petitioner places considerable reliance on *Brewster Shirt Corporation* v. *Commissioner*, 159 F. 2d 227, reversing a Memorandum Opinion of this Court, and *Hunt Foods, Inc.*, 17 T. C. 365, affd. 204 F. 2d 429. In the *Brewster Shirt* case, the taxpayer, pursuant to a factoring agreement, transferred its accounts receivable to the factor in exchange for an advance of 90 per cent of the face value of the accounts. The assignment agreement there involved clearly stated that the accounts assigned were assigned as collateral security for loans. The issue there presented was whether or not the assignment agreement constituted an evidence of indebtedness under section 719 of the 1939 Code. The United States Court of Appeals for the Second Circuit held that the agreement in question was the equivalent of a mortgage and therefore qualified as an evidence of indebtedness under that section. Inasmuch as the agreements here in question do not disclose that the contracts assigned by Brizard were intended as collateral security for a loan, but speak instead of a sales transaction, *Brewster Shirt Corporation* v. *Commissioner, supra,* appears clearly to be factually distinguishable from the situation here presented.

*Hunt Foods, Inc., supra,* is likewise distinguishable. The taxpayer there drew sight drafts with attached bills of lading on its customers for merchandise sold and endorsed the drafts to its bank which in turn credited the taxpayer's account for the amount of each draft. In the event such drafts were not honored by the drawee, the bank charged the amount thereof against the account of the taxpayer. We there held that the foregoing method of financing constituted borrowing by the taxpayer and that the amount of the drafts outstanding represented an outstanding indebtedness within the meaning of section 719 of the 1939 Code. Contrary to the situation here presented, there was no intention on the part of the parties there involved to sell the drafts to the bank.

Further, since the Bank of America acquired title to the contracts and notes assigned to it by Brizard, the provisions of the California

Civil Code[2] creating a banker's lien "upon all property in his [banker's] hands *belonging to a customer*, for the balance due to him from such customer in the course of the business" have no application here. (Emphasis added.)

A situation analogous to the facts here involved was presented in *East Coast Equipment Co.*, 21 T. C. 112, affd. 222 F. 2d 676. The taxpayer there sold equipment under lease and purchase option agreements. The agreements subsequently were transferred by the taxpayer to a financial institution under an "Assignment and Recourse Agreement," in exchange for an amount less than the face value of the contracts. The issue there presented was whether or not the agreements were sold by the taxpayer to the financial institution within the meaning of section 44 (d) of the 1939 Code, or were merely pledged as security for loans. We there held that the transaction constituted a sale rather than a pledge, stating as follows, at pages 120–121:

> Each of the 26 agreements involved in this proceeding was transferred by the petitioner immediately upon acquisition to the Contractors Acceptance Corporation. To effect the transfer the petitioner signed in each case the "Assignment and Recourse Agreement" set forth in our Findings of Fact. As the terms of that agreement indicate, the petitioner sold and transferred the installment obligation to Contractors Acceptance Corporation and received in turn a cash equivalent. *Elmer* v. *Commissioner*, 65 F. 2d 568. The petitioner contends that in doing so it did not dispose of the installment obligations but simply pledged them with the finance company as collateral security for loans. However, the evidence fails to bear this out. There is nothing in the agreements between the petitioner and the Contractors Acceptance Corporation to indicate that the parties thereto intended that the installment obligations should simply be pledged as security for loans. On the contrary, the conduct of Contractors Acceptance Corporation indicates otherwise for the record reveals that it was the habit of Contractors Acceptance Corporation to deal with the installment obligations as it would its own property. In many instances Contractors Acceptance Corporation in turn transferred the installment obligations to a bank to secure moneys needed in its business. Further, Contractors Acceptance Corporation was compensated for its efforts not by the petitioner but by the equipment purchasers who bore the tariff in the guise of interest-bearing notes transferred by the petitioner to Contractors Acceptance Corporation along with the other contracts. Further, the books of Contractors Acceptance indicate that that corporation considered the transaction one of purchase and of sale. We do not deem the fact that the petitioner guaranteed the installment paper significant. * * *

In view of the explicit language contained in the three agreements in effect between Brizard and the bank during the year in issue and the fact that both parties to the assignment transaction apparently re-

---

[2] Cal. Civ. Code Ann. (West 1954) :
SEC. 3054. **Banker's lien.**
BANKER'S LIEN. A banker has a general lien dependent on possession, upon all property in his hands belonging to a customer, for the balance due to him from such customer in the course of the business.

garded the transfer of notes and contracts to the bank as an outright sale of the paper involved, we are of the opinion that no "outstanding indebtedness" resulted from such assignment within the meaning of section 439 (b) (1) of the 1939 Code. We accordingly hold that the proceeds received by Brizard from the assignment of its promissory notes and conditional sales contracts to the Bank of America during 1951 do not qualify as borrowed capital within the meaning of section 439 (b) (1) of the 1939 Code.

*Decision will be entered for the respondent.*