APPEAL OF FORTY-FOUR CIGAR CO.

Docket No. 1405.   Submitted May 14, 1925.   Decided November 4, 1925.

Expenditures made by a corporation for the purpose of inducing a relative of the president and principal stockholder to cease activities which were damaging to the financial affairs of the president and incidentally endangered the business of the corporation, held not deductible by the corporation as ordinary and necessary expenses or as losses.

*M. L. Schallek, Esq.*, for the taxpayer.
*E. C. Lake, Esq.*, for the Commissioner.

Before Ivins,[1] Korner, and Morris.

This appeal is from the determination of a deficiency in income and profits taxes for the year 1918 amounting to $74,471.42, resulting from the disallowance of a deduction as a loss or business expense in the amount of $108,636.57.

### FINDINGS OF FACT.

The taxpayer in 1918 was a Pennsylvania corporation with principal offices in Philadelphia and with factories located in various cities in Pennsylvania and New Jersey. It was engaged in manufacturing and selling "Lipschutz 44 Cigar."

On January 1, 1918, the taxpayer had outstanding $46,800 par value of preferred stock and $279,900 of common stock, owned almost in its entirety by the president and founder of the company.

A relative of the president of the taxpayer sought to oust the president and obtain control of the company for himself. By surreptitious means he caused a transfer of some of the president's stock to be made into his own name. He induced some of the valued employees of the taxpayer to sever their connection with the company. He caused certain of the factories to be closed by strikes and other means. He caused the taxpayer considerable embarrassment among its financial connections and with its customers. He undertook a competing business marketing "Lipschutz 88 Cigar." He instigated domestic trouble between the president and his wife. He did other things for the purpose of disrupting the business. He succeeded in part. The situation culminated in litigation by divorce action and two cross-suits to determine the question of the ownership of the common stock in the taxpayer corporation as between the several members of the president's family so involved. Other directors and officers of the taxpayer, who had borne the situation for several years of gradual business disruption, threatened to resign unless the company settled the several controversies and was permitted to reestablish its prestige and good name. As the result of their insistence, and contrary to his judgment in the matter, the president effected a settlement of the controversies on behalf of the company and himself.

Nine hundred and fifty-one shares of the company's common stock which were held by other members of the president's family were delivered to him, and he in turn delivered them into the taxpayer's treasury, leaving about 1,800 shares of common stock standing in his

---

[1] This decision was prepared by Mr. Ivins during his term of office.

name upon the taxpayer's records. The taxpayer issued $125,000 of its preferred stock to the litigant members of the president's family, to whom it also paid $10,000 in cash and issued $65,000 of its time notes, payable in equal amounts of $500 each over a period of 130 weeks. It further paid all of the attorney's charges for services performed on behalf of the president in effecting the settlement.

The stockholders of the taxpayer believed that it would have been ruined financially through the actions by the president's relatives; that its name and reputation would have been destroyed and its business lost to competitors, except for the settlement effected with the president's relatives.

The net increase in par value of outstanding stock, together with the obligations paid and incurred, amounted to $108,636.57, which amount the taxpayer deducted on its tax return for 1918—the year in which the settlement occurred—as a loss sustained or as an ordinary and necessary business expense.

The Commissioner disallowed the deduction and determined a deficiency in income and profits taxes for the year 1918 in the amount of $74,471.42, and from that determination the taxpayer duly appealed to this Board.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

IVINS: In final analysis, the money and credit of the corporation were paid out for the purpose of settling disagreement in the family of the president of the company, who owned practically all of the stock. To be sure, it was done with the consent and upon the recommendation of the minority stockholders and officers, who feared that if it were not done the company would be ruined. The transaction amounted to a withdrawal of corporate assets and their use for the personal benefit of the president and principal stockholder. The facts are that the president had insufficient means, except by using the assets of the corporation, to enable him to induce his relative to cease his pernicious activities. That those activities, if continued, would probably have resulted in the ruin of the corporation's business does not, in our opinion, render the payments a loss to or an ordinary and necessary business expense of the corporation, or deprive them of their essential character as personal expenditures of its president.