## BREWSTER SHIRT CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

### No. 14, Docket No. 20170.

Circuit Court of Appeals, Second Circuit.

Jan. 11, 1947.

Benjamin S. Kalnick, of New York City (Jerome Weit, of New York City, of counsel), for Brewster Shirt Corporation, petitioner.

Sewall Key, Acting Asst. Atty. Gen. A. F. Prescott and S. Dee Hanson, Sp. Assts. to the Atty. Gen., for the Commissioner of Internal Revenue, respondent.

Before SWAN, AUGUSTUS N. HAND and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The taxpayer seeks to have reversed an order of the Tax Court of the United States which sustained a determination by the Commissioner of Internal Revenue of a deficiency in excess profits taxes for the year 1941 in the amount of $3,148.91.

The question before us is whether various advances to the taxpayer by its factor Mills Factors Corporation represented "borrowed capital" within the meaning of Section 719(a) (1), 26 U.S.C.A. Int.Rev. Code, § 719(a) (1), for the purpose of computing its excess profits.

Section 710 of the Revenue Act, 26 U.S. C.A. Int.Rev.Code, § 710 fixes the tax on adjusted excess profits net incomes. In arriving at the tax the Commissioner disallowed a sum of $185,332.77 borrowed from Mills Factors Corporation which the taxpayer had set forth in its return for the purpose of establishing a proper credit in reporting its excess profits net income for

the year 1941. The propriety of this disallowance depends on whether that sum was "borrowed capital" which in turn depends on the interpretation to be placed on the portions of Section 719 of the Act quoted in the margin.[1]

The Commissioner gave a narrow construction to the words "bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage or deed of trust * * *" and assessed a deficiency in excess profits taxes by holding that the taxpayer was not entitled to the credit claimed under Sections 712 and 714, 26 U.S.C.A. Int.Rev.Code, §§ 712, 714, because the loans by Mills Factors Corporation did not come within any of the specifications of Section 719. The Tax Court affirmed the Commissioner.

The Brewster Shirt Corporation was organized in 1931 with a capitalization of $40,000, of which $18,000 was expended in purchasing a factory at Danbury, Connecticut. That expenditure left it with insufficient capital for profitable operation and it was obliged to resort to the common practice of factoring its accounts in order to obtain sufficient capital for its business. Accordingly it entered into a written agreement with Mills Factors Corporation under which it assigned its accounts receivable to the Factor and the latter agreed to advance 90% of the face value of such accounts and the balance upon payment of the assigned accounts. As is common in such factoring agreements there was a stipulated charge on the part of the Factor, for its expenses and services, of ¾ of 1% per month on the net sales of the taxpayer assigned to the Factor. The taxpayer agreed to repurchase at face value accounts which were not paid at their maturity, assumed all credit risks with respect to the accounts, including liability for defects in goods and agreed to hold returned merchandise in trust for the Factor until any amounts advanced thereon should be repaid. The parties stated the general terms of their arrangements as set forth in the margin.[2]

In accordance with the agreement the taxpayer assigned accounts receivable to Mills Factors Corporation and obtained money thereon from the Factor. These assignments were effected by instruments separate from the agreement, reflected the specific accounts assigned, and were in the following form: "For value received, we hereby sell, assign, transfer and set over unto Mill Factors Corporation, its successors and assigns the accounts receivable indicated below and all of our right, title and interest in and to any merchandise therein described that may be returned to us and we hereby guarantee to said Mill Factors Corporation that such accounts are

[1] "§ 719. Borrowed invested capital "(a) Borrowed capital. The borrowed capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following: "(1) The amount of the outstanding indebtedness (not including interest, and not including indebtedness described in section 751(b) relating to certain exchanges) of the taxpayer which is evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, or deed of trust, * * *."

[2] First: Where terms of sale to customers shall first have been approved by the Factor in writing, and the accounts receivable assigned to the Factor, all as in this agreement provided for, the Factor will purchase said accounts receivable subject to the terms and conditions hereinafter set forth, at their net face value, less trade discounts and commissions. Brewster is to pay interest for all additional time taken by its customers in the payment of their bills, provided such interest is not paid by customer. * * *
Fourth: As collateral security for any and all sums which may now or hereafter be due from Brewster to the Factor, Brewster further and hereby assigns to the Factor, except as noted below, all accounts receivable, bills receivable and other evidences of indebtedness arising from sales or created in the course of Brewster's business, and Brewster hereby grants to the Factor a lien thereon, and upon any and all merchandise of Brewster, the sale of which has resulted in such accounts receivable. Brewster agrees to execute any further form of assignment which may be required by the Factor. The exception refers to all export shipments and also sales made on terms of 10 days or less, which latter may, at Brewster's option, be eliminated from the terms of this agreement.

just and true, that no payments have been made on account thereof, that there are no defenses, counterclaims or offsets thereto, that the terms of credit are as specified therein and that no part of these accounts has been assigned, transferred or in any other manner encumbered, except as therein stated. This assignment is made pursuant to the agreement between us and Mill Factors Corporation dated 3/24/38."

At the end of each month a statement was submitted by the Factor to petitioner showing balance of the amount advanced by the Factor to petitioner. In its Excess Profits Tax Return, filed for the year 1941, the taxpayer computed its invested capital and included as part of its average borrowed invested capital 50% of its daily average outstanding indebtedness to Mills Factors Corporation. If the borrowed invested capital was "evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage or deed of trust, * * *" as prescribed by Section 719(a) (1) of the Internal Revenue Act the amount inserted in the return was the correct amount to be credited under Section 719(b), which reads as follows: "(b) Borrowed invested capital. The borrowed invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be an amount equal to 50 per centum of the borrowed capital for such day."

The opinion of the Tax Court in denying the above credit claimed by the taxpayer for borrowed invested capital set forth the taxpayer's contention that the agreement with the Factor and the various assignments of accounts receivable "were in effect and in reality, notes or bills of exchange within the meaning of the quoted section of the Internal Revenue Code," and then merely added: "With this contention we are unable to agree," and cited their decisions in Journal Publishing Co. v. Commissioner, 3 T.C. 518; Wm. A. Higgins & Co., Inc., v. Commissioner, 4 T.C. 1033, and Flint Nortown Theatre Co. v. Commissioner, 4 T.C. 536, as authority for the result reached.

We think that the decision interprets the credit allowable under Section 719 for borrowed invested capital too narrowly and was not required by the prior authorities on which it relied.

It is clear that as soon as accounts were assigned and advances made thereon the agreement and assignments involved security transactions which in law constituted a mortgage. What legally is a mortgage is a matter of substance and not of mere form. This has long been the settled New York doctrine as is shown in the decisions in Sheldon v. McFee, 216 N.Y. 618, 620, 111 N.E. 220; Dunham v. Whitehead, 21 N.Y. 131, 133; Leitch v. Hollister, 4 N.Y. 211, 216; cf. In re Bernard & Katz, Inc., 2 Cir., 38 F.2d 40. While the meaning of the term "mortgage" in a tax statute like the one under consideration is ordinarily a matter for controlling determination by the United States Courts, decisions of the State Courts which define a commercial term in such common use as "mortgage" are a reasonable source of guidance.

The effect of the interpretation given by the Tax Court to the term "mortgage" would be to subject Factoring Agreements to burdensome excess profits taxes. Factoring Agreements are common enough but are frequently entered into by persons of only moderate financial strength who cannot obtain the money they need from commercial banks and must borrow at higher cost from institutions having greater freedom in the risks they may take when making loans. We cannot suppose that it was the intention of Congress to subject security given under Factoring Agreements to a form of taxation which would in effect discriminate against those arrangements in favor of secured bank loans, especially when borrowers from Factors are a class frequently least able to bear the burden. The fact that the security was given in the form of outright assignments is quite unimportant when the transaction was in effect a mortgage. Indeed, Article "Fourth" of the agreement with Mills Factors Corporation assigns all accounts "as collateral security." Article "Ninth" and "Fourteenth" moreover show that the accounts are collateral for loans and that the borrower is

liable for any deficiency.[3] We hold that indebtedness here was evidenced by instruments which constituted a mortgage. It made no difference that Article "First" of the agreement provided that the Factor should "purchase said accounts subject to the terms and conditions hereinafter set forth, at their net face value, less trade discounts and commissions" for the advances were in fact loans, the assigned accounts were collateral security by the terms of the agreement, and repayment of the advances was guaranteed by the borrower. Home Bond Co. v. McChesney, 239 U.S. 568, 36 S.Ct. 170, 60 L.Ed. 444.

In Flint Nortown Theatre Co. v. Commissioner, 4 T.C. 536, it was held that certain advances made on open account were not borrowed invested capital because they were not evidenced by any of the specific evidences of indebtedness enumerated in Section 719(a) (1) of the Internal Revenue Code. No mortgage was involved. In Wm. A. Higgins & Co., Inc., v. Commissioner, 4 T.C. 1033, it was held that when drafts were accepted under letters of credit the letters of credit ripened into an indebtedness to the extent of the acceptances and the acceptances would properly be included as bills of exchange in the computation of borrowed invested capital. No mortgage was involved in the issues be-fore the court in that case. There apparently were trust receipts covering foreign shipments but they were given after the acceptances and did not enter into the discussion by the Tax Court. Similarly in the case at bar when accounts are assigned and 90% was advanced thereon the agreement and assignment together constituted a "mortgage" of the accounts to secure the taxpayer's indebtedness to the Factor. In Journal Publishing Co. v. Commissioner, 3 T.C. 518, it was held that an agreement to purchase certain assets and the good will of a publishing concern for $520,000 was not a note and should not be included in the invested borrowed capital of the purchaser because the liability of the latter was contingent upon the performance of a counter obligation of the seller not to re-enter the publishing business during the contract period and was therefore not a certain obligation to pay a fixed amount and accordingly was not the equivalent of a note. No mortgage was involved.

We cannot see that any of the above decisions of the Tax Court indicate that the factoring arrangements in the case at bar were not equivalent to an indebtedness evidenced by a mortgage.

The order of the Tax Court is reversed and the proceeding remanded.

---

3 Ninth: Brewster assumes all credit risks in connection with the sales made by it hereunder. Brewster shall pay to the Factor upon its request, or, at the option of the Factor, the same may be deducted from any amounts due or to become due on other accounts previously or subsequently assigned, the amount of any account which shall be disputed in whole or in part or where the merchandise through the sale of which such assigned account has resulted or is represented to have resulted, is for any reason not finally accepted by the customer and the amount of any account the debtor owing which shall fail or become insolvent, make a general assignment, have a receiver appointed, or become a party to any proceeding in bankruptcy in which its adjudication in bankruptcy is sought, or for an extension of time to pay its debts pursuant to Section 74 or 77-b of the Bankruptcy Act, or, in any event, where an assigned account shall be more than 20 days past due, plus the Factor's commission and all other charges incurred by it hereunder in connection therewith, and thereupon the Factor will reassign such account to Brewster.

Fourteenth: If at the termination of this agreement there is any money owing to the Factor, the same shall be paid by Brewster, upon request, otherwise the Factor may sell any collateral held by it at public sale, with 10 days' notice to Brewster. The net proceeds thereof after deduction of all costs of sale, commissions and charges, including legal expenses, shall be applied to the indebtedness of Brewster hereunder. Any surplus shall be turned over to Brewster, but if there be a deficit, Brewster shall remain liable. At its option, the Factor may, in lieu of selling any or all of the accounts receivable, collect such of the accounts as it may choose, charging to Brewster all expenses of collection, including legal expenses, and apply the net proceeds thereof to the indebtedness of Brewster to the Factor hereunder.