HOWARD W. GREENWOOD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; HOWARD GREENWOOD INVESTMENTS, INC. v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Greenwood v. Commissioner
Docket Nos. 33574-86; 33575-86
United States Tax Court
T.C. Memo 1989-368; 1989 Tax Ct. Memo LEXIS 367; 57 T.C.M. (CCH) 1058; T.C.M. (RIA) 89368; July 25, 1989
Michael B. Schwartz, L. Lee McMurtry III, and Gary J. Winston, for the petitioners. Melanie R. Urban and Richard L. Hunn (specially admitted), for the respondent. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: In these consolidated cases, respondent determined deficiencies in and additions to petitioners' Federal income taxes as follows: Howard W. Greenwood
Additions To Tax
Year Ended
Deficiency
[1]Sec. 6653(a) Sec. 6653(a)(1)
Sec. 6653(a)(2)
December 31, 1980
$ 49,961
$ 2,498
December 31, 1981
$ 15,559
$ 778
*
Howard Greenwood Investments, Inc.
Additions To Tax
Year Ended
Deficiency
Sec. 6653(a)
Sec. 6653(a)(1)
Sec. 6653(a)(2)
March 31, 1980
$ 921 $ 46
March 31, 1981
19,972
999 March 31, 1982
10,732
$ 537
*
*369 During the years at issue, petitioner Howard W. Greenwood (Howard) was the sole common stockholder of record of petitioner Howard Greenwood Investments, Inc. (HGI). After concessions, the only issues we must decide are: (1) Whether HGI is entitled to deduct certain payments made (and property transferred) to or on behalf of Howard's former spouse; and (2) whether Howard received constructive dividend income. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulated facts and exhibits are incorporated herein by this reference. Howard and HGI (and its consolidated subsidiaries) filed separate Federal income tax returns for the years at issue with the Internal Revenue Service Center at Austin, Texas. Howard used the cash method of accounting, and HGI used the accrual method of accounting. At the time the petitions in this case were filed, Howard's residence and HGI's principal place of business were in Houston, Texas. Vanda Mae Greenwood (Vanda Mae) and the deceased Howard W. Greenwood, Sr. (Howard, Sr.) are the parents of Howard and his sister, Vanda Anne Greenwood (Vanda Anne). Howard Sr. operated a print brokerage business, which essentially *370 involves the buying and selling of printed advertising as a "middleperson" between printers (as suppliers) and retailers (as customers). Sometime during 1974, Howard became involved in his father's business, which had been experiencing financial difficulty. In February 1975, Vanda Anne also became involved in the business at her father's request. On November 1, 1975, Howard married Irene Haag (Irene) in Toronto, Canada. Sometime during 1975, Howard, Sr. suffered a stroke. Shortly after their marriage, Howard and Irene moved to Houston, Texas, where Howard assumed operating control of his father's business. On October 21, 1976, HGI was incorporated under Texas law. Sometime prior to HGI's incorporation, Howard and Vanda Anne were transferred ownership interests in three corporations making up the print brokerage business. On October 29, 1976, HGI issued 51 shares of common stock to Howard, and 49 shares of common stock to Vanda Mae, as trustee for Vanda Anne. These shares represented 100 percent of the issued and outstanding common stock of HGI. HGI, in exchange, became the sole shareholder of the three corporations. Also on October 29, 1976, a buy-sell agreement was entered *371 into by and between HGI, Howard, Vanda Mae (as trustee for Vanda Anne), Vanda Anne, and Irene (as Howard's wife). The agreement states that its purpose was "to provide for the purchase and sale of the shares of common capital stock now and to be owned by Shareholders, upon the occurrence of the events, for the consideration, and subject to the terms and conditions hereinafter set forth * * *." The first paragraph of the agreement refers to the term "Shareholders" as those "who are the undersigned holders of all the record stock of the Company * * *." Section VI of the buy-sell agreement is styled "COMMUNITY PROPERTY INTERESTS OF SPOUSES," and states in part: By the execution of this Agreement and in consideration of the obligations assumed by the Company hereunder, the present wife of each individual Shareholder under this Agreement who does not own shares of Company stock as separate property and her Shareholder-husband hereby agree that, in the event of * * * their divorce, such Shareholder-husband shall have the exclusive right and option to purchase all or any part of the shares of Company stock to which such wife is entitled by virtue of any community property, or other marital *372 property, laws, or any decree of separation, divorce or property division, whether or not presently registered in the spouse's name * * * [upon certain specified terms]. On October 31, 1977, HGI issued 69,218 shares of preferred stock to a benefit plan for its employees. On or about March 9, 1978, Vanda Anne sold her 49-percent beneficial interest in HGI back to HGI. The shares were sold back to HGI after discord had developed between Howard and Vanda Anne. An initial negotiated price for the stock of $ 250,000 was later reduced to $ 200,000 after it was agreed that Vanda Anne would receive exclusive rights to do business with two retail customers of HGI. The $ 200,000 price was to be paid over more than eight years in installments at a 7 percent rate of interest. In addition to the sale of the stock, Vanda Anne's employment with HGI was terminated, and she essentially agreed not to compete with HGI for five years with respect to specified current and potential customers. In October 1979, HGI threatened to sue both Vanda Mae and Vanda Anne, alleging, inter alia, that they omitted to disclose that certain officers and employees of HGI and its subsidiary had engaged in certain *373 acts in concert with others which resulted in a claim of fraud by a major customer. HGI (or a subsidiary) paid $ 138,000 to reimburse the major customer for its loss stemming from the claim of fraud, without admitting guilt. The dispute between HGI and Vanda Mae and Vanda Anne was resolved without court action. In settlement in February 1980, Vanda Anne was paid in lump sum the remaining balance of the installments due her from HGI on the sale of her interest in the company, less $ 70,000. In early 1978, Irene filed a divorce action against Howard. Irene and Howard reconciled briefly, but separated permanently in the middle of 1979. Irene's representatives were given access to and examined HGI's books, records, and other items in order to determine HGI's value. On March 14, 1980, a decree of divorce was entered by the district court of Harris County, Texas. At the time of the divorce, HGI had significant value. The divorce and its aftermath were bitter. Indeed, from the time the divorce was final until the trial of this case, Howard (or HGI) had filed about five lawsuits against Irene, and Irene filed about three lawsuits against Howard (or HGI). The decree of divorce states *374 in part: The Court finds that Petitioner [Irene] and the Respondent [Howard] have entered into an "Agreement Incident to Divorce" for the division of their estate, debts and taxes, and that the division is just and right. It is therefore ORDERED and DECREED that the agreement is approved and is incorporated into this Decree by reference as if it were recited herein verbatim. The Agreement Incident to Divorce was entered into by Irene and Howard on March 10, 1980. Schedule One of the agreement lists "PROPERTY SET ASIDE TO IRENE GREENWOOD, WIFE," and includes the following: 2. A 1978 Mercedes 450 SL automobile * * * leased from Charlie Thomas Leasing Co., which automobile will be transferred to Petitioner [Irene] at the termination of the lease, free of any encumbrance. * * * 4. An employment contract with Howard Greenwood Investments, Inc., at the rate of $ 2,000.00 per month for a period of sixty-six (66) months. * * * 7. Use of the "New York" apartment, leased by Howard Greenwood Investments, Inc., for a period of two (2) weeks per year for the next three (3) years, provided it is maintained by the corporation as a temporary residence. * * * The agreement *375 set aside to Howard, among other property, ownership of HGI and its subsidiaries. Irene and HGI entered into the "Employment Contract," referred to in the Agreement Incident to Divorce, which states in part: NOW THEREFORE, Howard Greenwood Investments, Inc., by and through its duly elected officers, does hereby employ IRENE PIEKUT GREENWOOD to be the Representative of the corporation, with such duties as usually are carried on and handled by a Representative, as such duties are set forth from time to time by the Board of Directors, and that the terms of said employment are as follows: The duration of the employment of IRENE PIEKUT GREENWOOD shall be for five and one half years (66 months) unless she shall voluntarily resign or retire. The salary for the above described employment shall commence on [blank] at the rate of $ 24,000 per year payable bi-monthly, providing further that the salary shall not be reduced lower than $ 24,000.00 per year, but that the Board of Directors may increase her salary from time to time, as the Board may deem fit and proper. In consideration of the above provisions, I, IRENE PIEKUT GREENWOOD, hereby accept such employment and agree to perform *376 the duties as Representative of the corporation at the salary above set forth. * * * An addendum was made to the "Employment Contract" stating that HGI would provide Irene, as additional consideration, a telephone credit card with a maximum charge authority of $ 50 per month. On March 10, 1980, Howard signed a guaranty, in his individual capacity, that the payments due Irene under the "Employment Contract" would be made by HGI. HGI also obtained a decreasing term life insurance policy on the life of Howard, in the exact amount of the payments due Irene over the 66 month period. Also on March 10th, Howard signed an agreement on behalf of HGI, and two other corporations for which Howard was record shareholder, with Irene styled "This Memorandum of Agreement," which states in part: 1.) Mrs. Greenwood [Irene] hereby relinquishes all right, title and interest in and to stock in HGI * * * [and the two other corporations]. 2.) In consideration for the above HGI * * * [and the two other corporations] agree to pay the sum of Ten Dollars ($ 10.00) and other valuable consideration being specifically the 1978 Mercedes 450 SL * * * with an appraised value of $ 25,000. * * *377 * Finally, on March 10th, Howard signed an agreement individually and on behalf of HGI, its subsidiaries, and the two other corporations for which he was record shareholder, with Irene styled "Mutual and General Release." In this agreement, the parties essentially released all claims against each other, except for obligations under the "Employment Contract" and those contained "in that certain Agreement of even date * * *." The word "Agreement" referred to in the Mutual and General Release is not defined. Since many agreements were dated March 10th, it is unclear what specific agreement is being referred to in the Mutual and General Release. Irene never actually performed any services for HGI under the "Employment Contract." Indeed, she believed all along that such payments were not salary or wages, but instead were made in connection with her release of any community property claim that she may have to the stock of HGI. Consistent with such belief, on January 31, 1981, Irene completed a Form W-4 Employee's Withholding Allowance Certificate claiming exempt status, writing "UNDER PROTEST" next to her signature. On March 1, 1982, Irene similarly completed another Form W-4 claiming *378 exempt status, under protest. She prepared both forms only upon threats that payments under the "Employment Contract" would cease if she failed to do so. HGI sent Irene completed Forms W-2 Wage and Tax Statements, showing the amounts paid under the "Employment Agreement," FICA withheld, and zero Federal income tax withheld, for the calendar years 1981, 1982 and 1983. Irene filed copies of the Forms W-2 with her 1980, 1981 and 1982 Federal income tax returns. However, she did not include the compensation shown on the Forms W-2 in her reported income for such years, with the following explanation on her returns: "AMOUNT REPORTED IN ERROR AS WAGES-AMOUNT REPRESENTS PAYMENTS PURSUANT TO PROPERTY DIVISION INCIDENT TO DIVORCE." Respondent disallowed the following deductions claimed by HGI: Years Ended March 31
Item
1980
1981
1982
Payments to Irene under
"Employment Contract"  $ 2,000
$ 23,000
$ 23,723
Mercedes 450 SL turned
over to Irene  23,055
New York Apartment usage
800
800
Telephone charges paid
150
Respondent also determined Howard had constructive dividend income for the calendar years 1980 and 1981 of $ 43,905 and $ *379 24,984, respectively. OPINION The first issue presented by this case is whether the deductions claimed by HGI represent ordinary and necessary business expenses under section 162. If not, we must next decide whether these costs were borne by HGI primarily for the benefit of Howard, and thus represent constructive dividends to him. In the event we resolve these two issues in favor of respondent, petitioners alternatively argue that the payments made under the "Employment Contract" by HGI on Howard's behalf represent periodic payments deductible by Howard under section 215. While these three issues are analytically distinct, their common focus is upon the characterization the deductions in question -- i.e., what were the expenditures by HGI for? Petitioners bear the burden of proof on all issues before us, since respondent's determinations are presumed to be correct. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a). Deductions by HGI
We first consider whether HGI was entitled to deduct the expenses disallowed by respondent. Section 162(a) generally allows *380 a deduction for all the ordinary and necessary expenses paid or incurred in carrying on any trade or business. This includes "a reasonable allowance for salaries or other compensation for personal services actually rendered * * *." Sec. 162(a)(1). Whether an expense is ordinary and necessary is a question of fact. Commissioner v. Heininger, 320 U.S. 467, 475 (1943); Walliser v. Commissioner, 72 T.C. 433, 437 (1979). "Ordinary" has been interpreted to mean that an expense must bear a reasonably proximate relationship to the operation of the taxpayer's trade or business. Deputy v. du Pont, 308 U.S. 488, 495-496 (1940); Challenge Manufacturing Co. v. Commissioner, 37 T.C. 650, 660 (1962). "Necessary" has been interpreted to mean that the expense must be "appropriate" or "helpful" to the taxpayer's trade or business. Commissioner v. Heininger, supra at 471; Carbine v. Commissioner, 83 T.C. 356, 363 (1984), affd. 777 F.2d 662 (11th Cir. 1985). Petitioners concede that Irene did not actually render any services to HGI. Thus, the payments are not deductible *381 as a salary or other compensation under section 162(a)(1). Instead, petitioners argue that Irene possessed sensitive information about HGI's financial condition, and the involvement of a predecessor corporation in an alleged fraudulent scheme involving a major customer. If this information had been disclosed to business associates, suppliers, other customers and the competition, petitioners contend that it would have seriously injured or destroyed the company. Bitter from the divorce, Howard alleges that Irene threatened on numerous occasions to do anything in her power to ruin HGI. Faced with this threat, HGI contends that it entered into the "Employment Contract" with Irene in order to impose upon her the implied duty of an employee, under Texas law, to take no harmful acts against HGI. The transfer to Irene of the Mercedes, her use of the New York apartment, and her use of the company telephone charge card were all consideration for her "employment." In petitioners' view, it was the classic "carrot and stick approach" -- the payments under the contract would continue so long as Irene remained loyal to HGI. In support of their argument, petitioners cite cases and rulings standing *382 for the proposition that payments made by a taxpayer to protect its goodwill or business reputation are deductible as ordinary and necessary business expenses. Pepper v. Commissioner, 36 T.C. 886, 894-895 (1961) (payments by law firm in satisfaction of client's debts secured by fraud held deductible); Catholic News Publishing Co. v. Commissioner, 10 T.C. 73, 77 (1948) (taxpayer's payments to settle claim of alleged malfeasance by its president who served as president and treasurer of the Catholic Press Association, of which the taxpayer was a member, held deductible); Scruggs-Vandervoort-Barney, Inc. v. Commissioner, 7 T.C. 779 (1946) (payments by taxpayer to reimburse depositors for losses sustained upon the liquidation of its predecessor held deductible); Fairmont Homes, Inc. v. Commissioner, T.C. Memo. 1983-209 (payments made to half-owner of taxpayer to prevent litigation over corporate control and unwanted management interference jeopardizing the taxpayer's business and reputation held deductible); Rev. Rul. 79-283, 1979-2 C.B. 80; Rev. Rul. 73-226, 1973-1 C.B. 62. [2]
*383 However, we factually distinguish all of these cases from the case at bar on the grounds that the payments in such cases did not arise in connection with the division of property incident to divorce. We do not find that Irene actually made any threats to destroy HGI, and we have serious doubt about whether she would in fact be able to carry out the threats petitioners purport were made. At best, the expenses deducted by HGI served a mere incidental purpose of protecting its goodwill or business reputation, subordinate to the far greater purpose of effectuating a property division between Howard and Irene. See United States v. Gilmore, 372 U.S. 39 (1963); see also Forty-Four Cigar Co. v. Commissioner, 2 B.T.A. 1156 (1925). Irene at least arguably had a community property claim to the stock of HGI. Both parties in this case submitted expert reports for the purpose of determining the fair market value of the outstanding common stock of HGI as of March 31, 1980. Petitioners' expert opined that HGI's common stock had a value of negative $ 234,859, while respondent's expert estimated a value between $ 400,000 and $ 600,000. We are persuaded *384 by respondent's expert's valuation methodology and results. Accordingly, we find that HGI had significant value at the time of Howard and Irene's divorce. Irene's claim is evidenced by her joining as a party to the buy-sell agreement, together with the stockholders of record of HGI. Also, four days before the divorce decree, Irene signed an agreement titled This Memorandum of Agreement, wherein she relinquished "all right, title and interest in and to the stock in HGI * * *," and two other corporations to which Howard was stockholder of record. This agreement specifies consideration of $ 10 and the Mercedes Benz, with an appraised value of $ 25,000. It is patently clear to us that the transfer of the Mercedes to Irene was not a business expense of HGI, but rather was made by HGI on Howard's behalf in consideration for Irene's release of any claim she either had or may have had to the HGI stock held by Howard. We are also convinced that the "Employment Contract" (including its addendum providing for the payment of telephone charges incurred by Irene) and the use of the New York apartment were in fact further consideration for Irene's release of any community property claim to *385 HGI's stock. Most compelling is the fact that these items, as well as the Mercedes, were included on the list of property set aside to Irene in the Agreement Incident to Divorce. We are not persuaded by petitioners' argument that these items were included in the agreement merely to "clarify" Irene's ownership of such items at the time the agreement was entered into. Rather, such items were, in actuality, set aside to Irene as result of Howard and Irene's settlement of the property division. Accordingly, we hold that the expenditures made by HGI to Irene during the years at issue were not ordinary and necessary business expenses under section 162. Constructive Dividends to Howard
We next consider whether Howard received constructive dividend income from HGI. Dividend income is included in the gross income of the recipient. Sec. 61(a). The term "dividend" is defined as any distribution of property by a corporation to its shareholders out of post-1913 accumulated and current earnings and profits. Sec. 316(a). [4] In deciding whether a constructive dividend is present, of determinative *386 significance is whether the distribution was primarily for shareholder benefit. Crosby v. United States, 496 F.2d 1384, 1389 (5th Cir. 1974). Howard was the sole common stockholder of record of HGI during the years at issue. HGI made expenditures on Howard's behalf in consideration for Irene's release of any claim she either had or may have had to the HGI stock held by Howard. Accordingly, we uphold respondent's determination of constructive dividend income to Howard. Alimony Payments by Howard
Finally, we consider petitioners' alternative argument that the payments made under the "Employment Contract" by HGI on Howard's behalf represent periodic payments deductible by Howard under section 215. Section 215 allows a husband to deduct payments made to his wife if those payments are included in her gross income under section 71. Section 71(a) provides that a wife must include *387 in her gross income periodic payments "in discharge of a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband" under a divorce decree. Section 71(a) applies only to payments made in recognition of the general obligation of support which is made specific by the decree. Sec. 1.71-1(b)(4), Income Tax Regs. Payments which are part of a property settlement are capital in nature and, therefore, are not subject to the provisions of section 71. Yoakum v. Commissioner, 82 T.C. 128, 134 (1984). It is well settled that labels assigned to payments by a husband and wife in their agreement or by the court in the divorce decree are not conclusive. Rather, the determination rests upon all of the surrounding facts and circumstances. Yoakum v. Commissioner, supra at 140. In Beard v. Commissioner, 77 T.C. 1275 (1981), we delineated factors which indicate that payments are more like a property settlement than a support allowance: (1) That the parties in their agreement *388 (or the court in its decree) intended the payments to effect a division of their assets * * *; (2) that the recipient surrendered valuable property rights in exchange for the payments * * *; (3) that the payments are fixed in amount and not subject to contingencies, such as the death or remarriage of the recipient * * *; (4) that the payments are secured * * *; (5) that the amount of the payments plus the other property awarded to the recipient equals approximately one-half of the property accumulated by the parties during marriage * * *; (6) that the need of the recipient was not taken into consideration in determining the amount of the payments * * *; and (7) that a separate provision for support was provided elsewhere in the decree or agreement. * * * [Beard v. Commissioner, supra at 1284-1285. Citations omitted.] As more fully discussed above, we conclude that the payments under the "Employment Contract" were part of Howard and Irene's property settlement. Without specific discussion of each of the factors specified in Beard, we would simply add that the "Employment Contract" was personally guaranteed by Howard, and was secured by a reducing term insurance *389 policy on his life. Accordingly, we hold that the payments made under the "Employment Contract" by HGI on Howard's behalf are not deductible by Howard under section 215. To reflect the foregoing and concessions, Decisions will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩
*. 50 percent of the interest due on $ 15,559.↩
*. 50 percent of the interest due on $ 10,732.↩
2. We are not, of course, bound by respondent's rulings. Accordingly, we cite to respondent's rulings not as authority, but simply to further explain petitioners' argument.↩
4. Petitioners have not argued that HGI's earnings and profits during the years at issue were insufficient to cover any of the constructive dividends as determined by respondent.↩