UNITED STATES of America, Plaintiff,

v.

NATIONAL STEEL CORPORATION, Defendant.

No. IP 94–1007–C.

United States District Court, S.D. Indiana, Indianapolis Division.

April 4, 1995.

Peter Sklarew, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC and Jeffrey L. Hunter, Asst. U.S. Atty., Office of the U.S. Atty., Indianapolis, IN, for plaintiff.

Michael R. Fruehwald, Barnes & Thornburg, Indianapolis, IN and Kenneth J. Kies, Baker & Hostetler, Washington, DC, for defendant.

### ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S MOTION TO DISMISS

McKINNEY, District Judge.

This matter comes before the Court on the motion of plaintiff United States of America ("United States") for summary judgment against defendant National Steel Corporation ("National Steel"), and the motion of National Steel to dismiss for failure to state a claim. The issues have been fully briefed and are ripe for resolution. For the reasons discussed below, the Court GRANTS the plaintiff's motion for summary judgment and DENIES the defendant's motion to dismiss.

1. These facts are drawn from the Proposed Findings of Undisputed Fact submitted by the parties.

### I. FACTUAL & PROCEDURAL BACKGROUND

The following facts are undisputed.[1] National Steel is a domestic corporation engaged in the production and manufacture of steel. National Steel is a calendar taxpayer.

On March 9 and 11, 1988, National Steel and a delegate of the Commissioner of Internal Revenue entered into a Closing Agreement on Final Determination Covering Specific Matters (Form 906) with respect to National Steel's taxable year ended December 31, 1987 ("Closing Agreement"). The Closing Agreement reflected National Steel's anticipation that it would be entitled to claim an overpayment of tax determined under § 212 of the Tax Reform Act of 1986 ("the 1986 Act"). The text provided that the Internal Revenue Service ("IRS") would promptly release any such refund; that National Steel would employ the refund within three years towards certain specified ends; and that the period of limitations for the IRS to bring suit to recover any amount of the refund that was determined to be erroneous or excessive would not expire prior to the expiration of the period of limitations on assessment of tax (taking into account extensions) for National Steel's 1987 tax year. The Closing Agreement further provided that it was final and conclusive, and that "no change or modification of applicable statutes will render this agreement ineffective with respect to the terms agreed to herein."

Pursuant to the Closing Agreement, on or about March 15, 1988, National Steel executed and submitted to the IRS an Election and Claim for Quick Release of Overpayment Resulting From the Application of Section 212 of the Tax Reform Act of 1986 ("Election/Claim").

The Election/Claim applied to 100 percent of National Steel's "existing carryforwards," as defined in § 212(g)(2) of the 1986 Act, attributable to investment tax credits ("ITCs") claimable by National Steel for each of the years 1979 through 1986 inclusive. Of the total $43,489,680 in existing carryovers reported in the Election/Claim, $5,782,782

Both sides agree as to the material facts in this case.

was attributable to the ITC claimed by National Steel for the year 1986. Fifty percent of the total existing carryovers, or $21,744,840, was the amount calculated under § 212(b) of the 1986 Act. Of this amount, $2,891,391 (50% of $5,782,782) was attributable to the claimed ITC carryforward from the 1986 year.

On the Election/Claim, National Steel reported a 1987 unpaid income tax liability of $2,500,000 as of March 15, 1988, and claimed an overpayment of $19,244,840. On March 25, 1988, the IRS issued a refund to National Steel in the amount claimed.

On or about September or December 1988,[2] National Steel filed its 1987 corporate income tax return (Form 1120), reflecting a net upwards adjustment of $6,511 to the existing carryforward previously claimed under § 212, and including a reconciliation of the amount due under § 212. The Form 1120 increased the amount calculated under § 212 from the $21,744,840 specified on the Election/Claim to the $21,748,096 shown on the reconciliation page and listed as estimated tax payments on line 32–b of the Form 1120.

Subsumed within the net additional $6,511 shown on National Steel's 1987 Form 1120 was a $10,039 increase in the 1986 ITC figure, from the $5,782,782 reflected in the Election/Claim to $5,792,821. That increased the § 212 amount attributable to the 1986 ITC carryforward by $5,020 (50% of $10,039), from the $2,891,391 specified on the Election/Claim to $2,896,411.

During its examination of National Steel's 1987 income tax return, the IRS examined whether National Steel's 1986 ITC was properly attributable to transition property in accordance with § 49(e) of the Internal Revenue Code of 1986 ("the Code"). The IRS disallowed $509,134 of the $5,792,821 carryforward of ITC from 1986 to National Steel's 1987 tax year, but otherwise did not challenge National Steel's 1986 ITC as attributable to transition property. National Steel agreed to the $509,134 adjustment, thus reducing the originally claimed $5,792,821 carryforward from the 1986 year to $5,283,688 and reducing any otherwise allowable 50% credit under § 212 by $254,567.

After completing its examination of National Steel's 1987 tax return, the IRS advised National Steel that the IRS had determined that it was improper to include the 1986 ITC in the computation of "existing carryforwards" under § 212. National Steel disputed this position. On December 15, 1991, the IRS sent National Steel a notice of the proposed adjustments, including disallowance of the § 212 credit attributable to the 1986 ITC. National Steel protested the adjustment to the IRS Appeals Office on March 16, 1992.

On January 15, 1992, National Steel paid the IRS $1,720,020 in tax (plus interest), of which $254,567 was attributable to the agreed adjustment referred to above. The $1,720,020 was assessed by the Secretary of the Treasury on February 6, 1992.

This payment by National Steel (subsuming the disallowance of $254,567 of the § 212 overpayment attributable to the 1986 ITC figure as already adjusted on the return) reduced from $2,891,391 to $2,641,844 the remaining portion of the March 25, 1988, refund that is attributable to the original inclusion of the 1986 ITC in the computation of the § 212 refund. In other words, of the $2,891,391 portion of the March 25, 1988, refund attributable to the initially claimed 1986 ITC carryforward, National Steel has repaid $249,547 to the IRS. Therefore, the present controversy involves the remaining $2,641,844 of the March 25, 1988, refund that has not been repaid, plus interest if applicable. The plaintiff is in agreement with this "bottom line" figure of $2,641,844.

During the course of the IRS examination of National Steel's 1987 income tax return, National Steel and the IRS executed several Forms 872 (Consent to Extend the Time to Assess Tax), extending the limitations period on assessments ultimately until June 30, 1994.

---

2. National Steel asserts that the date of the filing was September 15, 1988, while the IRS maintains that the return was filed on December 15, 1988. Both sides concede, however, that the actual date is immaterial to the resolution of this case.

On June 28, 1994, a delegate of the Secretary of the Treasury made an assessment against National Steel for corporate income tax for the 1987 year in the amount of $2,641,844, plus $2,369,300.69 in interest. The United States commenced this action on June 29, 1994.

## II. STANDARDS OF REVIEW

### A. Motion to Dismiss

In evaluating a motion to dismiss for failure to state a claim, the Court accepts as true all well-pleaded factual allegations and the inferences reasonably drawn from them. *Baxter by Baxter v. Vigo County School Corp.*, 26 F.3d 728, 730 (7th Cir.1994). Dismissal is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *Hi–Lite Prods. Co. v. American Home Prods. Corp.*, 11 F.3d 1402, 1405 (7th Cir.1993). However, the Court need not ignore facts set out in the complaint that undermine the plaintiff's claims, *American Nurses' Ass'n v. State of Illinois*, 783 F.2d 716, 724 (7th Cir.1986), nor is the Court required to accept the plaintiff's legal conclusions. *Gray v. Dane County*, 854 F.2d 179, 182 (7th Cir.1988).

### B. Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A party moving for summary judgment initially has the burden of showing the absence of any genuine issue of material fact in evidence of record. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Schroeder v. Barth, Inc.*, 969 F.2d 421, 423 (7th Cir.1992). If the moving party carries this burden, the opposing party then must "go beyond the pleadings" and set forth specific facts that show that a genuine issue exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d

265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Co.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Hong v. Children's Mem. Hosp.*, 993 F.2d 1257, 1261 (7th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1372, 128 L.Ed.2d 48 (1994). An issue is genuine only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Conclusory statements and speculation are not sufficient to defeat a proper motion for summary judgment. *See Weihaupt v. American Med. Ass'n*, 874 F.2d 419, 428 (7th Cir.1989); *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir.1985).

The opposing party must do more than create a mere "colorable" factual dispute to defeat summary judgment; disputed facts must be material, that is, outcome determinative. *Anderson*, 477 U.S. at 248–49, 106 S.Ct. at 2510–11; *Schroeder*, 969 F.2d at 423; *Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir.1992). The substantive law identifies which facts are considered material. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment; irrelevant or unnecessary disputes will not. *Id.*

In considering a summary judgment motion, a court must draw all reasonable inferences "in the light most favorable" to the opposing party, and must resolve any doubt against the moving party. *Spraying Sys. Co. v. Delavan, Inc.*, 975 F.2d 387, 392 (7th Cir. 1992); *Board of Trustees of the Univ. of Ill. v. Insurance Corp. of Ir.*, 969 F.2d 329, 331–32 (7th Cir.1992). If a reasonable fact-finder could find for the opposing party, summary judgment is inappropriate. *Shields Enters., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir.1992). If the standards of Rule 56(c) are met, however, summary judgment becomes mandatory. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Anderson*, 477 U.S. at 248–50, 106 S.Ct. at 2510–11; *Shields Enters.*, 975 F.2d at 1294. Summary judgment is not a disfavored procedural shortcut; rather, it is an integral part of the federal

rules, which are designed to secure the just and expeditious determination of every action. *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2554–55; *see United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267–68 (7th Cir.1990), *cert. denied*, 499 U.S. 923, 111 S.Ct. 1317, 113 L.Ed.2d 250 (1991).

### III. DISCUSSION

#### A. Timeliness of the Suit

#### 1. Erroneous Refund Suit

Section 7405 of the Code provides for the recovery of erroneous refunds. *See* 26 U.S.C. § 7405. In conjunction with this, § 6532(b) sets forth the statute of limitations for an action by the United States to recover an erroneous refund. *See* 26 U.S.C. § 6532(b). In relevant part it states: "Recovery of an erroneous refund by suit under section 7405 shall be allowed only if such suit is begun within 2 years after the making of such refund." *Id.*

■ Cases interpreting § 6532(b) have adhered strictly to the literal language of the statute. While there is authority granting the government wide latitude in its power to collect erroneous refunds, *e.g., United States v. Wurtz*, 303 U.S. 414, 415–16, 58 S.Ct. 637, 638, 82 L.Ed. 932 (1938), such cases acknowledge that statutory barriers would alter this power. Cases decided after the enactment of statutory barriers to collection such as § 7405 and § 6532(b) have strictly enforced the statutory periods imposed upon the government when collecting erroneous refunds. *See Kavanaugh v. Noble*, 332 U.S. 535, 539, 68 S.Ct. 235, 237, 92 L.Ed. 150 (1947); *Radinsky v. United States*, 622 F.Supp. 412, 414 (D.Colo.1985). As the court in *Radinsky* concluded, the "short answer is that [the defendants] are entitled to the money unless

the IRS brings a civil action within two years." *Radinsky*, 622 F.Supp. at 414.

In this case, the government waited until after the two year statute of limitations had elapsed before filing suit for the collection of the erroneous refund against National Steel. However, before the end of this two year period the parties did enter into the Closing Agreement. It provides:

> The taxpayer agrees that the period of limitations for the Service to bring suit to recover any amount of such overpayment claimed by the taxpayer that is determined to be erroneous or excessive shall not expire prior to the expiration of the period of limitations on assessment of tax (including any extended period(s) agreed to by both the Service and the taxpayer) with respect to the taxpayer's federal income tax return for its taxable year ending December 31, 1987.

Decl. of Peter Sklarew, Ex. A.[3] The cases cited above to demonstrate the absolute nature of the two year period do not involve such an agreement.

Section 7121, which authorizes closing agreements, states that "the Secretary is authorized to enter into an agreement in writing with any person relating to the liability of such person . . . in respect to any internal revenue tax for any taxable period," 26 U.S.C. § 7121(a); and that "if such agreement is approved by the Secretary . . . such agreement shall be final and conclusive." 26 U.S.C. § 7121(b).[4] In light of this provision, the agreement between the IRS and National Steel to enlarge the refund collection period appears to be valid.

National Steel argues that the IRS may not enter into agreements changing the statutory time limits set up in the Code without express authorization in the Code. *See* Rev.

---

**3.** The language of the Closing Agreement contemplates the recovery by the IRS of "overpayment[s] claimed by the taxpayer" that are determined to be "erroneous or excessive." Although the Closing Agreement does not specifically mention 28 U.S.C. § 6532(b) (addressing erroneous refunds), its language appears to encompass the same type of suit.

**4.** In this case, National Steel and the IRS entered into a Form 906 Closing Agreement. This form is used where there is agreement as to a specific matter affecting tax liability with regard to specific items in past or future years. These agreements are binding as to the matters agreed upon for the taxable period stated in the agreement, which may also include future years. *Zaentz v. Commissioner*, 90 T.C. 753, 761, 1988 WL 34876 (1988).

Rul. 86–104, 1986–2 C.B. 80.[5]  National Steel points out that while § 6532(a)(2) specifically provides procedures by which the statute of limitations can be extended for taxpayers desiring refunds (based on the written agreement of the parties), § 6532(b) provides for no such extensions for the government.

Significantly, however, in contrast to other sections of the Code, extension of the statute of limitations is not expressly prohibited under § 6532(b).[6]  The Court concludes that in this situation where both parties agreed to an extension of the statute of limitations for collection and there is no provision expressly prohibiting such an extension, the agreement should be followed, and the IRS should be able to bring suit any time within the agreed-upon dates.

## 2. *Regular Assessment of Liability Procedures*

■ Even if the government is barred from bringing an erroneous refund suit under § 6532(b), that in and of itself does not destroy their claim.  In addition to collecting erroneous refunds using § 7405 and § 6532(b), the government may collect such sums by creating a new assessment or making a redetermination of the taxes owed, and proceeding under § 6501(a).  *See Brookhurst, Inc. v. United States*, 931 F.2d 554, 558 (9th Cir.1991); *United States v. C & R Investments, Inc.*, 404 F.2d 314, 315 (10th Cir.1968); *United States v. Brown*, 782 F.Supp. 321, 325 (N.D.Tex.1990); *Purcella v. United States*, 92–1 U.S.T.C. 83,331, 83,330–31, 1992 WL 8723 (D.Colo.1992).  Section 6501(a) requires the IRS to assess taxes

within three years after a return is filed by the taxpayer.  In addition, § 6501(c)(4) allows the taxpayer to enter into an agreement with the IRS to extend the period of time for assessment,[7] so long as this agreement is entered into before the statute of limitations under § 6501(a) has expired.  *See Melahn v. Commissioner*, 9 T.C. 769, 776, 1947 WL 95 (1947); *see also McDonnell v. United States*, 288 U.S. 420, 424, 53 S.Ct. 410, 412, 77 L.Ed. 869 (1933); *Aiken v. Burnet*, 282 U.S. 277, 280, 51 S.Ct. 148, 149, 75 L.Ed. 339 (1931); Rev.Rul. 74–580, 1974–2 C.B. 400.  If the assessment is made within this period, § 6502 allows the IRS to collect the money owed so long as the proceeding is begun within six years after the assessment.

In this case, the IRS made an assessment on June 28, 1994, and filed suit against National Steel on June 29, 1994.  These actions were taken within the statute of limitations as modified by National Steel and the IRS through the execution of several Forms 872 (Consent to Extend the Time to Assess Tax) which extended the applicable statute of limitations to June 30, 1994.[8]  Thus, the IRS brought suit within the allowed period of time.

In this case, the government (although it claims it was not necessary), made an assessment against National Steel on June 28, 1994, in the amount of $2,641,844 (plus $2,369,300.69 in interest) for corporate income tax for the 1987 year.  This was done within the statutory period for assessment prescribed by the Forms 872 entered into by National Steel and the IRS.  In addition, the suit was filed on June 29, 1994, within the

---

5.  Specifically, National Steel refers to the following comment in Rev.Rul. 86–104: "the Commissioner does not have the authority to extend a time period specified by statute unless the statute confers such authority."  Rev.Rul. 86–104, 1986–2 C.B. 80.  This ruling, however, dealt with a unilateral extension of time by the IRS pursuant to § 1.9100–1 of the Income Tax Regulations, and therefore does not apply directly to extensions by agreement.

6.  For example, § 6501(c)(4) provides that the parties may extend by agreement the time prescribed by statute for the assessment of tax "except the estate tax provided in chapter 11."  This type of express prohibition is absent from the language of § 6532(b).

7.  Revenue Ruling 86–104, 1986–2 C.B. 80, is cited by National Steel as prohibiting the Commissioner from extending the time period specified by statute unless the statute confers such authority.  Section 6501(c)(4) expressly confers such authority as to the extension of the time for assessment.

8.  The execution of Form 872 is the method prescribed by Rev.Proc. 79–22 for consenting to an extension of the statute of limitations on assessment.  *See Ledford v. United States*, 94–1 U.S.T.C. 83,202, 83,205, 1993 WL 603285 (S.D.Ind.1993).

agreed upon time limit. Thus, this suit is not barred by any statute of limitations.

### B. The Closing Agreement

■ Section 7121 of the Code states that if a closing agreement is approved by the Secretary, "such agreement shall be final and conclusive, and, except upon a showing of fraud or malfeasance, or misrepresentation of a material fact—the case shall not be reopened as to the matters agreed upon ..." 26 U.S.C. § 7121(b)(1). It is well established that closing agreements are final as to matters agreed upon therein. *Spendthrift Farm, Inc. v. United States*, 931 F.2d 405, 407 (6th Cir.1991); *Smith v. United States*, 850 F.2d 242, 245 (5th Cir.1988); *Wolverine Petroleum v. Commissioner*, 75 F.2d 593, 595 (8th Cir.1935); *Aetna Life Ins. Co. v. Eaton*, 43 F.2d 711, 714 (2d Cir.1930); *Magarian v. Commissioner*, 97 T.C. 1, 4, 1991 WL 116592 (1991); *Zaentz v. Commissioner*, 90 T.C. 753, 760, 1988 WL 34876 (1988); *Cramp Shipbuilding Co. v. Commissioner*, 14 T.C. 33, 37, 1950 WL 113 (1950); *Bankers' Reserve Life Co. v. United States*, 42 F.2d 313, 316, 70 Ct.Cl. 379 (Ct.Cl.1930). Premises underlying the agreement, however, do not bind the parties; and while the recitals in a closing agreement may assist in interpreting the agreement, they are not binding upon the parties for purposes of resolving an issue concerning a matter other than the matters agreed upon. *Zaentz*, 90 T.C. at 762; *See also Pack v. United States*, 992 F.2d 955, 959–60 (9th Cir.1993); *Magarian*, 97 T.C. at 5. Form 906 agreements, like the one signed by National Steel and the IRS, are "binding as to the matters agreed upon for the taxable period stated in the agreement, which may also include future years." *Zaentz*, 90 T.C. at 761.

■ As to the effect of subsequent retroactive legislation on closing agreements, Revenue Ruling 56–322 conclusively states, "[a] valid closing agreement establishing final determination of Federal tax liability for a prior taxable period is not affected by subsequent legislation retroactively applicable to the taxable period to which such agreement relates where such legislation is silent as to its effect on the closing agreements." Rev.Rul. 56–322, 1956–2 C.B. 963.[9] This statement reflects the established case law position that closing agreements are final even in the face of subsequent legislation. *See, e.g., Dubinsky v. Becker*, 64 F.2d 601, 602 (8th Cir.1933).

■ The question at issue in this case is whether the use of § 212 of the 1986 Act to calculate tax liability was a specific matter agreed upon in the Closing Agreement between National Steel and the IRS. If not, then the amended version of § 212 controls. The amendment was made by the Technical and Miscellaneous Revenue Act of 1988 ("TAMRA"). TAMRA retroactively amended § 212 to prohibit the use of investment tax credits earned after December 31, 1985, in the § 212 refund computation. TAMRA is silent as to impact on closing agreements; thus, it would not appear to override terms agreed to in closing agreements. So the issue in this case is whether the use of the pre-amendment version of § 212 was a term agreed to by the parties in the Closing Agreement.

The IRS asserts that the Closing Agreement was merely a procedural formality to allow National Steel to receive a quick refund, and that it did not include any substantive terms for calculating tax liability. National Steel, on the other hand, asserts that the agreement specifically incorporates the use of § 212 of the 1986 Act as the method of calculating tax liability for the duration of the agreement. Thus, in its view, a change in the calculation method by application of the 1988 Amendments is precluded.

■ A closing agreement is interpreted like an ordinary contract. *Smith v. United States*, 850 F.2d 242, 245 (5th Cir.1988). The Closing Agreement entered between the parties provides as follows:

9. While the Ruling appears on its face to encompass only those closing agreements which determine final liability of a designated amount, it notes that the "principle [of this Revenue Ruling] was most recently reiterated in Cramp Shipbuilding Co. v. Commissioner, 14 T.C. 33 ...." (a case dealing with a Form 906 closing agreement like the one at issue in the present controversy). Thus, this Revenue Ruling applies to our facts.

370

WHEREAS, the taxpayer anticipates an overpayment of its federal income tax liability for its taxable year ending December 31, 1987, resulting from the application of section 212 of the Tax Reform Act of 1986 (Act) and desires a quick release by the Internal Revenue Service (Service) of any such overpayment; and

WHEREAS, the taxpayer may be unable to file its federal income tax return for its taxable year ending December 31, 1987, by its due date determined without regard to any time to file extensions.

NOW IT IS HEREBY DETERMINED AND AGREED for federal income tax purposes that:

1) The taxpayer agrees that the period of limitations for the Service to bring suit to recover any amount of such overpayment claimed by the taxpayer that is determined to be erroneous or excessive shall not expire prior to the expiration of the period of limitations on assessment of tax (including any extended period(s) agreed to by both the Service and the taxpayer) with respect to the taxpayer's federal income tax return for its taxable year ending December 31, 1987.

2) The taxpayer agrees that the amount determined under section 212 of the Act will be spent within three years of the date of the refund for reinvestment in and modernization of its steel operations through investment in modern plant and equipment, research and development, and other appropriate projects such as working capital for steel operations and programs for the retraining of steelworkers, as required by section 212(f) of the Act.

3) The Service agrees to effect a prompt release of any refund due upon the filing by the taxpayer of the election and claim for the quick release of refund.

WHEREAS, the determinations set forth above are hereby agreed to by the Service, and by the taxpayer, including its successors and assigns.

NOW THIS CLOSING AGREEMENT WITNESSETH, that the taxpayer and Commissioner of Internal Revenue hereby mutually agree that the determinations set forth above shall be final and conclusive, subject, however, to reopening in the event of fraud, malfeasance, or misrepresentation of material fact; furthermore, no change or modification of applicable statutes will render this agreement ineffective with respect to the terms agreed to herein.

Decl. of Peter Sklarew, Ex. A.

The Court finds that the Closing Agreement does not include an agreement that there will be a refund, or that such a refund will be calculated under § 212. The text begins with the statement that the "taxpayer anticipates" a refund. Then, in the first two numbered paragraphs, matters subsequent to the refund (recovery of the refund by the IRS; use of the refund by the taxpayer) are provided for. Then, in the third numbered paragraph, the IRS agrees to promptly release "any refund due," but does not agree that any refund is in fact due, or that such a refund will be calculated under a particular version of the statute. In short, while the parties may have expected based on the current version of § 212 that National Steel would get a refund, it was not a matter agreed upon in the Closing Agreement. As a result, the rule that closing agreements are final and conclusive, and the language in the last paragraph of the closing agreement shutting out changes in the applicable law, are not helpful to National Steel.

The Court finds that the language of the Closing Agreement is unambiguous, and that it does not bar application of the 1988 amendments to § 212. Summary judgment in favor of the United States is therefore proper.

## IV. CONCLUSION

The plaintiff, United States, has shown the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law with respect to its claim against the defendant, National Steel. Therefore, the United States' motion for summary judgment is GRANTED. National Steel's motion to dismiss for failure to state a claim is DENIED. National Steel is indebted to the United States in the amount of $2,641,844.00 plus $2,369,300.69 in interest

(for a total of $5,011,144.69) as of June 28, 1994, plus interest thereafter to the date of entry of judgment, plus interest accruing until the judgment is paid.

IT IS SO ORDERED.